UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JOSEPH SEACH,

      Plaintiff,                    CIVIL ACTION NO. 10-11741

      v.                              DISTRICT JUDGE LAWRENCE P. ZATKOFF

COMMISSIONER OF                MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On April 29, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of Disability Insurance and Supplemental Security Income benefits (Dkt. No. 2). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 8, 9).

    *B.    Administrative Proceedings*

Plaintiff filed the instant claims on June 12, 2006, alleging that he became unable to work on June 8, 2006 (Tr. 7, 109-116). The claim was initially disapproved by the Commissioner on September 21, 2006 (Tr. 64-72). Plaintiff requested a hearing and on January 29, 2009, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Ayrie Moore, who considered the

case *de novo*. In a decision dated June 25, 2009, the ALJ found that Plaintiff was not disabled (Tr. 4-21). Plaintiff requested a review of this decision on July 7, 2009 (Tr. 106-108). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on March 2, 2010, denied Plaintiff's request for review (Tr. 1-3).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II. STATEMENT OF FACTS

### A. *ALJ Findings*

Plaintiff was 39 years old on his alleged disability onset date (Tr. 19). Plaintiff has past relevant work as a grinder, assembler, painter and a welder (Tr. 19, 158-161). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since June 8, 2006 (Tr. 9). At step two, the ALJ found that Plaintiff had the following "severe" impairments: back disorder, affective disorder, substance abuse, bilateral carpal tunnel syndrome, status-post carpal tunnel releases and left tendon biceps rupture repair, sleep apnea, obesity and headaches. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr. 9-11). As to Plaintiff's mental impairments, the ALJ found that:

> With regard to concentration, persistence or pace, [Plaintiff] has *moderate* difficulties. State Agency medical consultants opined that [Plaintiff] had *mild* restriction in concentration, persistence or pace. I agree (Tr. 10) (citations omitted and emphasis added).[1]

---

[1] This statement by the ALJ is internally inconsistent. In the first sentence, the ALJ finds that Plaintiff has "moderate" limitations with respect to concentration, persistence and pace. The ALJ then goes on to say that the State Agency examiner opined that Plaintiff has "mild" restrictions in concentration, persistence and pace. The ALJ

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "light work...except he can perform frequent, but not constant, pushing and pulling with his legs; he can perform activities occasionally except he cannot climb ladders, scaffolds or ropes; he cannot lift overhead with his left non-dominant hand; he can frequently, but not constantly, use his hands and arms for handling and fingering and must avoid vibrations and work hazards. Further [Plaintiff] retains the mental residual capacity for only simple tasks" (Tr. 11). At step four, the ALJ found that Plaintiff could not perform his previous work as grinder, assembler, painter or welder (Tr. 19). At step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as polisher/buffer (7,520 jobs in the state of Michigan), inspector for electrical products (12,100 jobs in the State of Michigan) or assembler (19,130 jobs in the State of Michigan) (Tr. 20).

### B. Administrative Record

#### 1. Plaintiff's Testimony and Statements

At the hearing, Plaintiff testified that he lived in a mobile home with his wife and two children (Tr. 27). Plaintiff stated that he has a driver's license, and was able to drive for a portion of the 2-hour trip to the hearing (Tr. 28).

Plaintiff testified that he had bilateral carpal tunnel syndrome, for which he underwent surgery in October 2005 (Tr. 30). He claimed he still had numbness in the hands (Tr. 30). Plaintiff stated that he went back to work after the surgery with a 30-pound lifting limitation (Tr. 30, 44). Plaintiff also stated that he had trouble gripping things and dropped them occasionally (Tr. 40). Plaintiff said he could button and zip his clothing, although with some difficulty (Tr. 41-42).

---

then says "I agree." The State agency examiner actually opined that Plaintiff has "moderate" (not "mild") restrictions in concentration, persistence and pace, so it is possible that the ALJ simply committed a typographical error, and meant to say "moderate" instead of "mild." In any event, the ALJ's ultimate conclusion was favorable to Plaintiff – *i.e.* "moderate" limitation, rather than "mild" limitation – thus this error is harmless to Plaintiff.

Plaintiff also testified that he used a cane, although it was not prescribed by a doctor (Tr. 31). Plaintiff claimed doctors had recommended back surgery, but that he did not have insurance for such surgery (Tr. 31). Instead, he received one cortisone injection (Tr. 32). Plaintiff further testified that when he had a headache, he was unable to do anything for the rest of the day (Tr. 33). Plaintiff testified that he had not gone into the emergency room for headaches in at least 6 months (Tr. 36). Plaintiff claimed the headaches caused concentration problems (Tr. 42). Plaintiff stated that he took medication (Prozac) and saw a counselor for depression (Tr. 36). Plaintiff further stated that he had a 17-year old son with special needs (Tr. 45). Plaintiff bathed, dressed, and took care of his son (Tr. 45). In terms of other daily activities, Plaintiff handled his own grooming and personal needs, did some housework occasionally, took out light trash loads and sometimes went for walks (Tr. 47-48).

### 2.   Medical Evidence

In April 2005, Plaintiff underwent carpal tunnel decompression surgery on the left hand and surgical repair of a torn left biceps tendon (Tr. 182). In October 2005, he underwent carpal tunnel surgery on the right hand (Tr. 180). Plaintiff also had a history of degenerative changes in the lumbar spine (Tr. 210).

In June 2006, the month of alleged disability onset, Plaintiff was diagnosed with lumbar radiculopathy (Tr. 195). Magnetic resonance imaging (MRI) of the lumbar spine indicated degenerative and bulging disk with neuroforaminal narrowing at L4-5 on the left (Tr. 196). He received lumbar epidural injections (Tr. 196).

In September 2006, state reviewing psychologist Joe DeLoach reviewed the medical evidence and opined that Plaintiff was mildly to moderately limited in understanding and memory, and moderately limited in his sustained concentration and persistence (Tr. 306). Dr. DeLoach opined that Plaintiff could perform simple work activities on a sustained basis (Tr. 306).

-4-

A January 2007 x-ray of the lumbar spine indicated degenerative disc disease (Tr. 350). Plaintiff was treated by neurologist Gavin Awerbuch, who prescribed carpal tunnel splints, Ultram, Vicodin and Darvocet (Tr. 325, 340). On examination in May 2007, Dr. Awerbuch noted weakness of pinch and prehension and sensory loss in some fingers (Tr. 341). On examination in July 2007, Dr. Awerbuch noted reduced lumbar range of motion and positive straight leg raising (Tr. 340). Dr Awerbuch opined in September 2007 that Plaintiff was unable to work in any capacity (Tr. 356). In January 2008, Dr. Awerbuch noted that Plaintiff was doing fairly well but continued to have grasping difficulty and reduced range of lumbar motion (Tr. 354).

In terms of mental health history, Plaintiff saw Dr. Cesar Casten in July 2006, and requested antidepressants due to stress (Tr. 332). Dr. Casten noted that Plaintiff's teenaged son had suffered brain damage in a car accident as a child (Tr. 206). Dr. Casten prescribed Lexapro (an anti-depressant) (Tr. 332).

Plaintiff's records document a history of substance abuse, in particular, Seroquel and other narcotics (Tr. 368, 389, 400). He had previously stolen prescriptions from his primary care doctor to buy narcotic medications (Tr. 368). By September 2008, Plaintiff had been referred to AA for help and reported being drug-free for several days (Tr. 386). He also underwent Suboxone detoxification therapy for opiate abuse (Tr. 366). By November 2008, Plaintiff reported enjoying life more since ending his drug abuse (Tr. 378). Plaintiff reported being happy in December 2008 (Tr. 369). Plaintiff's psychiatrist, Charles Tita, opined that the major depressive disorder was single episode and in full remission (Tr. 366).

In January 2009, Dr. Awerbuch opined that Plaintiff could lift/carry less than 10 pounds, stand/walk for up to 2 hours in an 8-hour day, sit for less than 6 hours in an 8-hour day with alternating positions, and should avoid repetitive gripping (Tr. 403). Dr. Awerbuch additionally

opined that Plaintiff should avoid exposure to dust, noise, dangerous moving machinery, and driving (Tr. 403). In terms of mental limitations, Dr. Awerbuch opined that Plaintiff should have minimal contacts and social interaction, and that he was markedly limited in dealing with the public, or withstanding the stress and pressures of full-time work (Tr. 404). Dr. Awerbuch also opined that Plaintiff was moderately limited in his ability to understand, remember, and carry out technical and/or complex job instructions, but was only mildly limited in understanding, remembering and carrying out simple, one- or two-step instructions (Tr. 404).

### 3. Vocational Expert

At the administrative hearing, the ALJ asked a Vocational Expert (VE), Thomas Gusloff, whether any jobs existed for an individual of Plaintiff's age, education, and previous work experience, who was limited to performing a range of light work with all postural activities limited to occasional, and no ability to climb ladders, ramps, or scaffolds (Tr. 54). The ALJ further noted that this individual could not lift overhead with his left, non-dominant arm, work around vibrations or hazards, or use his hands and arms for handling and fingering on a constant basis (Tr. 55-56). Still further, the ALJ limited the individual to simple work tasks due to limitations in concentration, persistence and pace (Tr. 55).

The VE identified examples of unskilled, light jobs in the regional economy that such an individual could perform: polisher/buffer (7,250 statewide jobs); assembler (19,130 jobs); and inspector for electrical products (12,100 jobs) (Tr. 55-56). The VE cited the Dictionary of Occupational Titles (DOT) and Department of Labor statistics among the sources of his testimony and was asked to identify any conflicts with the DOT if they existed (Tr. 51). The VE did not point out any conflicts. *Id.*

### C. *Plaintiff's Claims of Error*

Plaintiff raises two overarching arguments on appeal. First, Plaintiff argues that, because in the preliminary assessment of the severity of his mental impairments the ALJ found that he was "moderately" impaired in concentration, persistence, or pace, the ALJ's RFC finding and matching hypothetical question, restricting Plaintiff to "simple tasks," were inadequate. *See* Pl.'s Br. at 6-13. Plaintiff cites various cases in which courts remanded certain RFC findings for other individuals, who were also rated as having moderate limitations (or under the older formulation of the regulatory technique, "often" experiencing deficiencies in concentration, persistence, or pace), because the limitations in those cases were inadequate to describe the individual's limitations. *See* Pl.'s Br. at 6-13.

Second, Plaintiff argues that the ALJ improperly evaluated the medical evidence. Specifically, Plaintiff avers that the ALJ wrongly relied on evidence pre-dating the alleged onset date concerning his back problems, and evidence of his return to work after the carpal tunnel surgeries, as evidence that he could still work. *See* Pl.'s Br. at 14-16. Plaintiff also contends that the ALJ erred in rejecting the opinions of his treating neurologist, Dr. Awerbuch. *See* Pl.'s Br. at 15. In particular, Plaintiff argues that the ALJ improperly rejected Dr. Awerbuch's opinions due to lack of supporting clinical findings. *See* Pl.'s Br. at 17.

### III. DISCUSSION

### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing

in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C. Analysis and Conclusions

As noted earlier, Plaintiff raises two arguments on appeal: (1) that the ALJ relied on an inaccurate hypothetical question that did not accurately portray Plaintiff's mental impairments; and (2) that the ALJ improperly evaluated Plaintiff's medical records. Each argument is discussed below:

### 1. Mental Impairments

As to an allegedly disabling mental impairment, the Commissioner has promulgated a special technique to ensure that all evidence needed for the evaluation of such a claim is obtained and evaluated. This technique was designed to work in conjunction with the sequential evaluation process set out for the evaluation of physical impairments. *See* 20 C.F.R. §§ 404.1520a, 416.920a. Congress laid the foundation for making disability determinations when mental impairments are involved in 42 U.S.C. § 421(h), which provides:

> An initial determination under subsection (a), (c), (g), or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

Section 404.1520a explains in detail the special procedure and requires the completion of "a standard document outlining the steps of this procedure." 20 C.F.R. § 404. 1520a(d). The regulation further requires the standard document to be completed and signed by a medical consultant at the initial and reconsideration levels, but provides other options at the administrative law judge hearing level. *Id.* Under this procedure, the Commissioner must first make clinical findings, as to whether the claimant has a medically determinable mental disorder specified in one of eight diagnostic categories defined in the regulations. *See Merkel v. Comm'r of Soc. Sec.*, 2008 WL 2951276, *10 (E.D. Mich. July 29, 2008), citing, 20 C.F.R. Pt. 404. Subpt. P, App. 1, § 12.00A.

The Commissioner must then measure the severity of any mental disorder; that is, its impact on the claimant's ability to work. "This is assessed in terms of a prescribed list of functional restrictions associated with mental disorders." *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. The first area of functional restriction is "activities of daily living." This area

requires the Commissioner to determine the claimant's ability to clean, shop, cook, take public transportation, maintain a residence and pay bills. *See Merkel*, at *10. Under the second functional area – "social functioning" – the Commissioner must determine whether the claimant can interact appropriately and communicate effectively and clearly with others. *Id.* The third functional area – "concentration, persistence, or pace" – refers to the claimant's ability to sustain focused attention sufficiently long to permit the timely completion of tasks found in work settings. *Id.* The final functional area, that of "deterioration or decompensation in work or work-like settings," refers to the claimant's ability to tolerate increased mental demands associated with competitive work. *Id.*

The degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) is rated using a five-point scale: none, mild, moderate, marked, and extreme. *See Pauley v. Comm'r of Soc. Sec.*, 2008 WL 2943341, *9 (S.D. Ohio July 30, 2008). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using a four-point scale: none, one or two, three, four or more. *Id.* "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Pauley*, at *9, citing, 20 C.F.R. § 404. 1520a(c)(4). Ratings above "none" and "mild" in the first three functional areas and "none" in the fourth functional area are considered severe. *Pauley*, at *9, citing, 20 C.F.R. § 404.1520a(d)(1). If the first two functional areas receive ratings of "none" or "slight," the third a rating of "never" or "seldom," and the fourth a rating of "never," the Commissioner will conclude that the mental impairment is not severe, and that it cannot serve as the basis for a finding of disability. *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(1), 404.1521.

If the functional areas indicate that the mental impairment is "severe," the Commissioner must decide whether it meets or equals a listed mental disorder. *See Merkel*, at *10, citing, 20 C.F.R.

§ 404.1520a(c)(2). The Commissioner will determine that the claimant is disabled if the mental impairment is a listed mental disorder and at least two of the criteria have been met. *See Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02, *et. seq*. If the severe mental impairment does not meet a listed mental disorder, the Commissioner must perform a residual functional capacity assessment to determine whether the claimant can perform some jobs notwithstanding his mental impairment. *See Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

The undersigned concludes that the ALJ's determinations regarding Plaintiff's mental impairments are fully supported by the substantial evidence in the administrative record. In this matter, the State Agency examiner specifically stated that Plaintiff's "psychological limitations do not appear to interfere with potential for work activities that are simple in nature. [Plaintiff] retains the capacity for simple tasks on a sustained basis" (Tr. 306). This finding is not significantly different than the hypothetical question the ALJ relied on, which limited Plaintiff to "simple tasks" (Tr. 55). The present case is thus distinguishable from *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 517 (6th Cir. 2010), where the State Agency examiner found that the plaintiff was limited to "[two-hour] segments over an eight-hour day where speed was not critical." In *Ealy*, the Sixth Circuit found that the ALJ erred by not including these specific pace-based restrictions in the controlling hypothetical. By contrast, the State Agency examiner's opinion in this case was not as restrictive as the examiner's opinion in *Ealy*, but rather the examiner in this case merely stated that Plaintiff could do "simple tasks."

Moreover, decisions in this district reflect the conclusion that a moderate impairment in concentration, persistence, and pace does not necessarily preclude simple, routine, unskilled work. *See e.g., Latarte v. Comm'r of Soc. Sec.*, 2009 WL 1044836, *3 (E.D. Mich. April 20, 2009); *Street v. Comm'r of Soc. Sec.*, 390 F.Supp.2d 630, 638 (E.D. Mich. 2005), citing, *Chafin v. Comm'r of Soc.*

*Sec.*, 2005 WL 994577, *2, 4 (E.D. Mich. April 26, 2005) (ALJ's hypothetical question addressed plaintiff's mental deficiencies sufficiently by limiting him to "simple, unskilled work." Further, although plaintiff had "moderate" deficiencies of concentration, persistence, or pace he could nonetheless perform the work of an assembler, packager, inspector, and security monitor); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 662 (E.D. Mich. 2004) ("ALJ took into account [the] [p]laintiff's depression ... by including limitations within the hypothetical ... limiting the possible jobs to simple, unskilled, and routine work"). The undersigned concludes that the ALJ's hypothetical question properly took into account Plaintiff's mental impairments, as found by the ALJ to be credible. Thus, there is no basis for overturning the ALJ's decision, which the undersigned finds is supported by substantial evidence.

    **2.    Medical Evidence**

Plaintiff next argues that the ALJ improperly relied on evidence pre-dating the alleged onset date concerning his back problems, and evidence of his return to work after the carpal tunnel surgeries, as evidence that he could still work. *See* Pl.'s Br. at 14-16.

With regard to Plaintiff's back impairments, the ALJ noted that Plaintiff had a back injury since his 1996 work accident, and continued to work with alleged back pain for 10 more years, until June 2006 (Tr. 18). The ALJ further noted that although the medical evidence during the relevant period indicated some mild to moderate degenerative changes in his lower back, Plaintiff received only conservative treatment and care, including Ultram once a day and Darvocet for break-through pain (Tr. 16). The ALJ considered that Plaintiff had increased symptoms in 2007, but they were associated with two recent falls that caused acute strain (Tr. 16). Plaintiff avers that his back condition worsened, however, the medical evidence does not support this claim. A March 2006 MRI study of the lumbar spine indicated moderate left L4-5 neural foraminal stenosis and

degenerative changes at L3-L4 (Tr. 199). A July 2007 imaging study of the lumbar spine indicated only mild retrolisthesis (posterior displacement of one vertebral body with respect to the adjacent vertebrae) of L4 over 5, but an otherwise unremarkable study (Tr. 350).

As to the carpal tunnel syndrome, the ALJ noted medical evidence indicating that, following his nearly full recovery from carpal tunnel and left biceps tendon surgery in August 2005, Plaintiff was able to return to work with a 35-pound lifting restriction (Tr. 18). The ALJ also noted that, in December 2005, two months after the right carpal tunnel release surgery, Plaintiff was back at work with a 30-pound lifting restriction lasting one month, according to Dr. Allport's notes (Tr. 185). The ALJ took into account that, less than 2 months prior to the alleged onset date, Dr. Casten authorized a 25 pound lifting restriction for work (Tr. 18, 221). She further noted that Plaintiff had minimal clinical findings relating to carpal tunnel during the relevant period, and had normal sensory, motor, and reflex findings (Tr. 15, 17-18). The ALJ noted that Plaintiff himself claimed the ability to lift up to 25 pounds occasionally (Tr. 18, 324).

The undersigned finds that it was not improper for the ALJ to consider, among many other factors, evidence that Plaintiff was able to work for 10 years with a lumbar spine impairment, and that he returned to work with lifting restrictions following his surgical recovery. *See, e.g., Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 229 (6th Cir. 1990) (Court noted that claimant returned to work for two years after his accident in 1979, and did not file for benefits until 1981).

Plaintiff also contends that the ALJ erred in rejecting the opinions of his treating neurologist, Dr. Awerbuch. *See* Pl.'s Br. at 15. Specifically, Plaintiff argues that the ALJ improperly rejected Dr. Awerbuch's opinions due to lack of supporting clinical findings. *See* Pl.'s Br. at 17. "Generally, the opinions of treating physicians are given substantial, if not controlling deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion is not

entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record.").

Dr. Awerbuch's May 2007 opinion that Plaintiff could not work in his previous capacity and September 2007 opinion that Plaintiff was not able to work in any capacity are opinions of disability, however this determination is reserved to the Commissioner (Tr. 18). *See* 20 C.F.R. §§ 404.1520(e)(1); 416.920(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *also Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 474 (6th Cir. 2008). Thus, the ALJ was not bound by these opinions, but could reject them so long as the ALJ gave good reasons for doing so.

The ALJ explained why she rejected Dr. Awerbuch's post-hearing opinion, dated January 2009 (Tr. 18). First, the ALJ noted that, with respect to the opinion about Plaintiff's mental limitations, Dr. Awerbuch did not treat Plaintiff for any mental impairment, and his opinion offered no supporting objective findings or examination results (Tr. 18). The ALJ also noted that Dr. Awerbuch's opinion on mental limitations was inconsistent with the mental health provider opinions in the record, in particular, the treating counselor and psychiatrist progress notes finding that Plaintiff had improved once he stopped abusing substances and his depression was in remission (Tr. 18, 366, 378). The ALJ "is not bound by conclusory statements of doctors, particularly where they are

-17-

unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 340 (6th Cir. 2008).

With regard to Dr. Awerbuch's opinion concerning Plaintiff's physical limitations – essentially restricting Plaintiff to sedentary work – the ALJ explained that she rejected this opinion because it was unsupported by Dr. Awerbuch's own examination findings (Tr. 19). The ALJ noted that Dr. Awerbuch, in his progress notes, recorded generally normal findings, and that he administered only conservative treatment measures (Tr. 19). Dr. Awerbuch's notes indicate Plaintiff was obtaining pain medications from his office as well as from another doctor (Tr. 354). The ALJ additionally noted that the objective medical findings of record indicated mild to moderate findings regarding carpal tunnel, and stable back condition (Tr. 19). The ALJ also noted that other medical opinions merely imposed a lifting restriction for Plaintiff's return to work. Plaintiff argues that Dr. Awerbuch did have supporting examination findings, such as decreased lumbar range of motion and positive Tinel's and Phalen's signs. Dr. Awerbuch did not, however, explain how such findings were of such extreme severity that Plaintiff could not lift more than 10 pounds, stand/walk for less than 2 hours a day, or sit without alternating positions (Tr. 403). In sum, it appears to the undersigned that the ALJ properly explained why she discounted Dr. Awerbuch's opinions.

For all of these reasons, after review of the relevant record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decision makers may go either way without interference from the courts," *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994), as the decision is supported by substantial evidence.

### III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgement be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon<br>
MARK A. RANDON<br>
UNITED STATES MAGISTRATE JUDGE

Dated: April 6, 2011

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 6, 2011.

*S/Melody R. Miles*<br>
*Case Manager to Magistrate Judge Mark A. Randon*<br>
*(313) 234-5542*